[No. 20341.  Department Two.  March 10, 1927.]

WASHINGTON SECURITIES COMPANY, *Respondent*, v. AMERICAN NITROGEN PRODUCTS COMPANY, *Appellant*.[1]

[1] EVIDENCE (147)—PAROL EVIDENCE TO VARY WRITING.  Oral evidence is not admissible to dispute the amount of a creditor's claim as listed in a written composition with creditors.

[2] COMPOSITION WITH CREDITORS (2)—BREACH.  Where, in a composition with creditors, a creditor agreed to look only to the result of future operations for fifty per cent of its claim, no time for payment was fixed, and time was not of the essence of the contract, the creditor could not claim a breach which would warrant a forfeiture without giving a reasonable notice and an opportunity to perform.

Appeal from a judgment of the superior court for King county, Kinne, J., entered June 14, 1926, upon findings in favor of the plaintiff, in an action on contract, tried to the court.  Reversed.

*Battle, Hulbert & Helsell*, for appellant.

*Long & Schweppe* and *Paul & Long*, for respondent.

TOLMAN, J.—Appellant, in the year 1923, became involved in financial difficulties and as a result a written agreement between it and all of its creditors was en-

¹Reported in 253 Pac. 1070.

tered into. This is not the usual composition agreement, in that certain Canadian creditors agreed to take over assets in Canada in full settlement of their claims, certain other creditors agreed to take over and assume pressing obligations of the corporation in a large amount and to defer any payments to them until general creditors were paid as therein provided, and the business was to be continued, and it was further agreed:

"That the revenue derived from the operation of the LaGrande, Washington, plant shall be applied first to the payment of the expenses of operating said plant, and such repairs, betterments or improvements as it may be necessary to make, and other necessary expenses of the corporation. The foregoing includes a salary of $400 per month from April 1st, 1923, to C. F. Graff, but no salary shall be paid to E. L. Blaine after April 30th, 1923. After the payment of the foregoing the net proceeds derived from the operation of said plant shall be disbursed in the following amounts and order: [Among others and in proper order, fifty per cent. of the claims of general creditors].

"The third parties hereto agree that upon the payment to them, as above provided, of the amount of the respective claims as hereinabove set forth, they shall execute and deliver to the first party a full and complete release of all claims and demands."

This agreement was signed by respondent, and its claim was therein listed at $615.

The appellant proceeded to carry on its business under the terms of this agreement. All of the prior conditions were met and performed, and in March, 1925, assuming that it had an offset to respondent's claim in the amount of $147.26 and claiming an oral agreement by which the face of respondent's claim was reduced to $575, it wrote respondent as follows:

"Under the creditors' agreement executed in May, 1923, to which you are a party, we are to pay off the

WASH. SEC. CO. v. AMERICAN NITROGREN P. CO.

Opinion Per Tolman, J.          [142 Wash.

creditors there listed as to sequence and amounts. The general creditors, Group 'F,' to which you belong, is the next unpaid item on the list. We are at this time able to apply a payment of 33 ⅓% on this item, and as the amount due you is $287.50, your dividend is therefore $95.83. It affords us the greatest pleasure to enclose our credit memorandum accordingly to apply on our invoice against you of August 19, 1924, in amount $147.26.''

To which respondent replied:

''We have your credit memorandum dated March 16, 1925, in the amount of $95.83.

''The credit memorandum looks very nice, but may we not have your check therefor.''

Again on April 10, 1925, appellant wrote respondent:

''On March 18th we had the pleasure of paying you by credit memorandum 33 ⅓% of the amount owing you under a certain creditors' agreement entered into in May, 1923. It pleases us no less to enclose herewith an additional credit memorandum in amount $51.43, covering the balance of our invoice of August 19, 1924, together with our check in amount $44.40. This check and credit memorandum represent another 33 ⅓% on this debt.''

Credit memorandum and check were enclosed as therein stated, and on April 22 of the same year appellant again wrote:

''On March 16th we had the pleasure of paying you 33 ⅓% of moneys owing you under a certain creditors' agreement entered into in May, 1923. On April 10th we paid another third, and we are enclosing our check in amount $95.83 representing the final third payment on this debt.

''We can assure you it pleases us very much that we are enabled to clean up this obligation, and we desire to once more thank you for your co-operation.''

and enclosed check accordingly. Respondent answered neither of these last two communications, did not cash

either check, made no demand for payment, and in June following began this action to recover $615, tendering back the unendorsed checks. Appellant answered, setting up the creditors' contract, alleging an oral agreement to reduce the claim to $575, and pleading as an offset its counterclaim in the sum hereinbefore mentioned.

The case was tried to the court. Evidence as to an oral agreement reducing the amount was ruled out upon the theory that it was an attempt by oral testimony to vary the terms of a written contract. The counterclaim was allowed in full, but because of the failure to pay or tender fifty per cent. of $615 less the counterclaim, the court in effect held that the creditor was released from its agreement, and accordingly entered a judgment against the appellant for $495.89 and costs, being the full amount of the claim, plus interest and less the counterclaim. From this judgment the appeal is prosecuted.

There being no cross-appeal, the allowance of the counterclaim by the trial court is final, and we must assume that such a credit existed and was properly claimed when dividends were declared under the creditors' agreement.

[1] Manifestly, under repeated rulings of this court, the trial court was right in rejecting oral evidence tending to dispute the amount of respondent's claim as listed in the written agreement, and there remains for our decision only the effect of appellant's failure to tender dividends on the full amount of the claim as it then existed.

[2] Authorities are not wanting to the effect that in an ordinary composition, the failure of the debtor to perform places the creditor in a position to sue for the original debt. In 12 C. J. 270 the rule is thus stated:

"The cause of action for breach or default varies according to the nature of the composition. If that is executory merely, and does not contemplate the release or discharge of the debtor until full performance, a breach or default avoids the composition and revives the original debt, and the creditor may sue for the whole of that debt or the balance over what he has already received under the composition, as the case may be, or he may prove therefor in bankruptcy or insolvency proceedings, or under an assignment for the benefit of creditors, although he may at his option stand upon the composition and sue for the sum or the balance of the sum agreed to be paid thereunder. Furthermore, the debtor cannot enjoin the execution of a judgment recovered for the original debt. When the composition is paid by a third person it would seem that the creditor cannot sue without returning what he has received under it.

"If the composition is executed and there has been a complete novation by an absolute release or discharge, a breach or default will not avoid the composition or revive the original debt, and the only remedy of the creditors is an action for damages for nonperformance, in which the measure of damages is the balance of the composition over what has already been received, being practically an action to specifically enforce the composition, unless the release contains a provision that it shall be null and void on default, in which case a default revives the original debt, or unless the entire composition is void, in which case the release is void also, and the original debt never has been discharged."

As we read the contract here involved, the creditor released the debtor wholly except as to the net proceeds derived from future operations, and the contract was fully executed by other classes of creditors who not only deferred their rights to the rights of general creditors, but also assumed heavy personal obligations in relieving the debtor from then pressing obligations. While we might well hold that this was an executed

contract, because such creditors, after the claims of general creditors have been satisfied, are entitled to be paid, and to permit respondent to disregard the contract would be unjust as to them, yet that is not necessary. There is another and even plainer reason why the respondent may not sue for its entire debt. By the contract, respondent agreed to look only to the results of future operations for fifty per cent of its claim. No date of payment was fixed. Time was not made the essence of the contract. And since there might well be an honest difference of opinion as to when and in what amounts distribution should be made, we have no hesitancy in holding that a reasonable demand would have to be made before any creditor could claim a breach which would warrant a forfeiture. No such demand was made here. Respondent received the checks and gave no intimation that it was objecting or would object because of the claim of reduction of the amount of the original debt. If it objected at all, it was only upon the ground of the offset which has since been established as just and legal. Consequently, no notice whatever was brought home to appellant that the creditor was objecting upon the ground upon which it prevailed below until the action was brought; and, of course, the respondent had a right to bring an action only for the amount due by the terms of the agreement until after reasonable notice and opportunity to perform, when it might be in a position to assert that it was no longer bound by the agreement.

We conclude that the judgment appealed from must be reversed, and since the checks were tendered into court unendorsed and can be cancelled or surrendered to the appellant, the judgment should be for the difference between fifty per cent of $615 and the amount of the counterclaim, or $160.24. It appears that under the

composition agreement the creditors have no right to receive interest; therefore, no interest should be allowed upon the counterclaim. The trial court is therefore directed to enter judgment against appellant for $160.24, as stated, with costs below. Appellant will recover costs on appeal.

MACKINTOSH, C. J., BRIDGES, PARKER, and ASKREN, JJ., concur.